UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNIE ALTMANN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RUSHMORE LOAN MANAGEMENT SERVICES, INC., et al.,<br><br>　　　　　Defendants. | 1:15-cv-880-LJO-MJS<br><br>MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTIONS TO DISMISS (Docs. 46, 48) AND REQUESTS FOR FEES AND COSTS (Docs. 55, 56) |

## I. INTRODUCTION

Plaintiff Ernie Altmann ("Plaintiff") brings this wrongful foreclosure action against Rushmore Loan Management Services, LLC ("Rushmore"), Wells Fargo Bank, a division of Wells Fargo, N.A. ("Wells Fargo"), and Trustee Corps ("Trustee") (collectively, "Defendants"). Plaintiff asserts twelve causes of action under federal and California law, all of which are premised on his assertion that Defendants unlawfully foreclosed on his property at 15923 Sonora Road in Knights Ferry, Stanislaus County, California ("the Sonora Road property"). Defendants argue the entire case should be dismissed, arguing, among other things, that the case is barred under the doctrine of res judicata. Doc. 46 at 2; Doc. 49 at 10. Defendants also move for sanctions, in the form of attorney's fees and costs, under Fed. R. Civ. P. 11(c)(3) ("Rule 11(c)(3)") on the ground that Plaintiff knew or should have known that his claims are not legally sound or otherwise barred by res judicata. Docs. 55, 56.

The Court held a hearing on the matters on December 7, 2015. *See* Doc. 61, Transcript of Dec. 7, 2015 Hearing ("Tr."). For the following reasons, the Court GRANTS Defendants' motions to dismiss and GRANTS IN PART Defendants' requests for attorney's fees and costs under Rule 11(c)(3).

## II. FACTUAL AND PROCEDURAL BACKGROUND

In October 2011, Plaintiff filed suit in this Court against Rushmore and other various financial

entities, generally alleging that they had unlawfully foreclosed on the Sonora Road property. *See Altmann v. Rushmore Loan Mgmt. Servs., LLC*, 11-cv-1807, Doc. 1 ("*Altmann I*"). Plaintiff alleged fifteen causes of action for:

1. Fraud & Deceit – Promise Made Without Intention to Perform
2. Violation of Calif. Rosenthal Act
3. Negligence
4. Violation of California RESPA Act.
5. Breach of Fiduciary duty.
6. Violations of Cal. Bus. and Profs. Code § 17200
7. Breach of Contract
8. Fraudulent Transfer of Property
9. Violation of Due Process (5th & 14th Amendment of U.S. Constitution)
10. Constructive Fraud
11. Unconscionable Contract
12. Violation of California Financial Code § 4973
13. Violation of Usury Law
14. Violation of Truth & Lending Act (TILA)
15. Fraud & Deceit.

*Id.* at 1.

Rushmore moved to dismiss all of Plaintiff's claims. Doc. 11. The Court granted the motion in its entirety, finding that Plaintiff's claims were time-barred or failed to state a claim (or both). *See Altmann v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1087 (E.D. Cal. 2012) ("*Altmann I* Order"). When doing so, the Court concluded that Plaintiff brought the case without good faith and in an attempt "to exploit the court system to delay or to vex defendants." *Id.*

In June of 2015, Plaintiff filed this case. Doc. 1. Plaintiff is represented by Mr. Scott Tibbedeaux, who did not represent Plaintiff in *Altmann I*. Shortly after Plaintiff served Defendants, counsel for Rushmore, Mr. Peter J. Van Zandt, emailed Mr. Tibbedeaux to inform him of the Court's *Altmann I* Order. *See* Doc. 55-1, Declaration of Peter J. Van Zandt ("Van Zandt Decl."), Ex. A at 1. Mr. Van Zandt attached a copy of the Order to the email. *Id.* Mr. Tibbedeaux read the email and the Order. Tr. at 4:12-22.

Mr. Tibbedeaux then filed the currently operative First Amended Complaint ("FAC"). Doc. 9. The FAC alleges twelve causes of action for:

1. Elder Abuse/Predatory Lending

    2. Fraud & Deceit – Forged documents incomplete documents and missing Documents
    3. Violation of RESPA
    4. Violation of TILA
    5. Negligence
    6. Violation of California's Rosenthal Act
    7. Breach of Fiduciary Duty
    8. Violations of California Business and Professions Code § 17200
    9. Unconscionable Contract
    10. Breach of contract
    11. Violation of Financial Code § 4973
    12. Notary Fraud

*Id.* at 1. Not all of the claims are brought against all Defendants; some are brought against only one Defendant. *See, e.g.*, *id.* at 13 (first cause of action brought against Rushmore only).

Because Mr. Tibbedeaux had not responded to Mr. Van Zandt's email, Mr. Van Zandt emailed Mr. Tibbedeaux again, informing Mr. Tibbedeaux that he was "likely going to file a motion to dismiss and the client is pushing for a Rule 11 Sanctions motion that [he] would naturally like to avoid filing." Van Zandt Decl., Ex. B at 1. Mr. Tibbedeaux read did not respond to this email. *Id.* at ¶ 4.

Defendants timely moved to dismiss. *See* Docs. 45, 46, 48. The thrust of Rushmore's motion is that this case is barred by res judicata because the claims are identical to those alleged and dismissed in *Altmann I*. *See* Doc. 46 at 3. Trustee moved to dismiss on the same ground, but also argued that Plaintiff failed to allege facts showing that Trustee was in any way liable for Plaintiff's claims. *See* Doc. 49 at 7.

When reviewing the motions preliminarily, the Court conducted a line-by-line comparison of the operative complaints in this case and in *Altmann I*.[1] That review led the Court to observe that the overwhelming majority of the former was drawn verbatim from the latter. *See* Tr. at 3:24-4:8. Specifically, although the first and twelfth causes of action[2] in this case were not alleged in *Altmann I*, the ten other causes of action were copied and pasted verbatim (or near-verbatim) from the *Altmann I* complaint. Almost all of the background facts likewise were copied and pasted verbatim from the

---

[1] The Court GRANTS Defendants' requests for judicial notice. Docs. 47, 50.

[2] The twelfth cause of action for "Notary Fraud" is borderline unintelligible. Its only factual allegation reads verbatim: "Defendant RUSHMORE made Altered loan docs after the fact of signing to bolster their claim and then having signatures Notarized after the fact not is in the presents of the Plaintiff, and I some case in done in other states." FAC at ¶ 140.

3

*Altmann I* complaint.[3] The Court therefore ordered Plaintiff under Fed. R. Civ. P. 11(c)(3) to explain in his opposition to the motions to dismiss why "sanctions should not issue for filing a pleading that [he] knew or should have known was legally unsound, and/or filed for an improper purpose." Doc. 53.

Plaintiff timely complied with this directive. Docs. 57, 58. Plaintiff's oppositions are not a model of clarity or excellence, but they appear to argue that Plaintiff's pending claims are not frivolous or barred by res judicata because the FAC alleges new facts, all of which occurred after the Court issued the *Altmann I* Order. *See id.* Specifically, Plaintiff seems to argue in his opposition that National City voided the loan that was the subject of *Altmann I*, the parties entered into new agreements in October 2012, and when Rushmore tried to foreclose on the property in 2014, Plaintiff discovered Rushmore had committed "fraudulent actions," namely, that Rushmore had voided the loan without telling Plaintiff and failed to fund the loan properly. *See* Doc. 57 at 1-2; Doc. 58 at 1-2. Because of this failure, Rushmore changed the interest rates on the loan many times, starting in May 2012 and continuing through 2015. *Id.* Mr. Tibbedeaux confirmed at the hearing that this case is supposedly based on facts not at issue in *Altmann I*. In particular, Mr. Tibbedeaux explained that "there was [*sic*] a couple new contracts that took place after [the *Altmann I* Order], and that's what this entire Complaint is about." Tr. at 6:1-4; *see also id.* at 6:13-17.

As to whether Plaintiff should be sanctioned for filing this case, the entirety of Mr. Tibbedeaux's argument is:

> "Sanction should not be imposed as this Suite was not filed for an improper purpose, nor was if filed trying to re litigate matters that are Res Judicata. It was filed as suit to stand separate from the 2011 complaint regarding actions that took place after the Previous Complaint was dismissed, as stated and argued above."

Docs. 57 at 8; 58 at 8; *see also* Tr. at 5:22-23.

### III. STANDARD OF DECISION

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the

---

[3] The only background facts in the FAC that were not drawn word-for-word from the *Altmann I* complaint are paragraphs 8, 10-11, parts of 25 and 26, 27, 30-31, 37, and 39-41.

4

allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiffs pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, the Plaintiffs should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. <u>ANALYSIS</u>

**A. Plaintiff's Claims Against Rushmore Are Barred by Res Judicata and Fail to State a Claim.**

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). A claim barred by res judicata requires "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (internal quotations and citation omitted). "The central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts." *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (internal quotations and citation omitted). "The phrase 'final judgment on the merits' is often used interchangeably with 'dismissal with prejudice.'" *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002).

As noted, the thrust of Plaintiff's argument as to why this case is alleged to be any different from *Altmann I* is that it involved transactions that occurred after the Court issued the *Altmann I* Order. *See* Doc. 57 at 1-2; Doc. 58 at 1-2. At the hearing, counsel for Rushmore strenuously argued that, even assuming Plaintiff intended to allege facts not at issue in *Altmann I*, he failed to do so in the FAC and, as a result, the FAC alleges facts and claims that are verbatim from the *Altmann I* complaint. Or, to put it in Mr. Tibbedeaux's words, the FAC "was heavy in background information that was from" the *Altmann I* complaint.

Critically, when challenged by Rushmore's counsel and the Court as to how the FAC is alleged to be different in any way from the *Altmann I* complaint, *see* Tr. 9:16-10:20, Mr. Tibbedeaux had no response. *See* Tr. at 11:21-25. He acknowledged that Mr. Van Zandt had sent him the *Altmann I* Order, which he reviewed with Plaintiff, and then explained to Plaintiff that the original complaint had to be amended or it was "not going to fly." *Id.* at 12:3-6. Mr. Tibbedeaux then attempted "to correct it so it more adequately reflect[ed Plaintiff's] position," but, in his own words, he "failed miserably" in doing so. *Id.* at 12:7-8. The Court agrees with Mr. Tibbedeaux that he was "too liberal in [his] cut[ting] and

past[ing]" from the *Altmann I* complaint when drafting the FAC. Tr. at 7:3-4.

The Court has performed a thorough, line-by-line comparison of the *Altmann I* complaint and the FAC in this case. The Court finds that only a small fraction of the FAC's supposedly new allegations/facts even remotely support Plaintiff's position. *See* FAC at ¶¶ 25, 27, 30, 31, 37. None of these facts, however, renders Plaintiff's claims materially distinct from the claims in *Altmann I*. The Court made these preliminary findings entirely clear to Mr. Tibbedeaux at the hearing, and he effectively did not challenge them. *See* Tr. 8-9. Nor did Mr. Tibbedeaux challenge Defendants' position that the FAC is in effect identical to the *Altmann I* complaint. *See id.* at 8-11.

As a result, Plaintiff's claims two through ten—all of which are *verbatim* from the *Altmann I* complaint—are clearly barred by res judicata. They also fail to state a claim for relief for the reasons more thoroughly explained in the *Altmann I* Order, that this Court incorporates by reference.

Plaintiff's first cause of action for "Financial Abuse of an Elder/Predatory Lending" is brought against only Rushmore and alleges a claim not at issue in the *Altmann I* complaint. The claim appears to have been brought under California Welfare & Institutions Code § 15657.5, although Plaintiff does not cite the statute. *See* FAC at ¶¶ 42-51. Section 15657.5 provides liability for financial abuse of an elder, which occurs when the defendant does any of the acts outlined in California Welfare & Institutions Code § 15610.30(a)(1)-(3). Even assuming the claim is not barred by res judicata in that Plaintiff could have brought it in *Altmann I*, the claim fails to allege any facts to support a claim for financial elder abuse.

Plaintiff's final cause of action for "Fraud and Deceit (False Notary)" is borderline unintelligible. The only factual allegation in the claim reads: "Defendant RUSHMORE made Altered loan docs after the fact of signing to bolster their claim and then having signatures Notarized after the fact not is in the presents of the Plaintiff, and I some case in done in other states." This is insufficient to state a claim, and none of the background allegations provides any support for the claim.

Accordingly, the Court DISMISSES WITH PREJUDICE Plaintiff's claims against Rushmore.

7

**B. Plaintiff's Claims Against Wells Fargo and Trustee Fail.**[4]

Plaintiff brings claims two, four, eight, nine, eleven, and twelve against Wells Fargo and Trustee; claim five is alleged against Rushmore and Wells Fargo only. As noted, claim twelve fails to state a claim and the remaining claims are materially identical to claims brought and dismissed *Altmann I*. Wells Fargo and Trustee are mentioned only in passing in the FAC. *See* FAC at ¶¶ 10, 11, 32. There are no specific factual allegations about their alleged involvement with Plaintiff. Plaintiff thus fails to allege *any* facts that suggest either Wells Fargo or Trustee could be liable for his claims against them, or that the analysis of the *Altmann I* order should not apply here. For the reasons more thoroughly outlined in the *Altmann I* Order, Plaintiff's claims fail to state a claim. The claims against Wells Fargo fail for the additional reason that they are barred by res judicata because Wells Fargo is in privity with Rushmore here, as Plaintiff explicitly acknowledges. *See* Doc. 57 at 6-7. Accordingly, the Court DISMISSES WITH PREJUDICE Plaintiff's claims against Wells Fargo and Trustee.

**C. Sanctions.**

Defendants request monetary sanctions against Plaintiff under Rule 11(c)(3) on the ground that Plaintiff knew or should have known that his claims were unsound. Docs. 55, 56. Counsel for Rushmore and Wells Fargo testify that they incurred $13,651.89 in attorney's fees and costs litigating this case through their initial motion to dismiss.[5] Doc. 55 at 2. Counsel for Trustee testifies that they incurred $7,197.85 in attorney's fees and costs litigating this case. Doc. 56 at 2. Defendants request that they be awarded these amounts in full as Rule 11 sanctions, for a total of approximately $21,000.00.

"Rule 11 is intended to deter baseless filings in district court and imposes a duty of 'reasonably inquiry' so that anything filed with the court is 'well grounded in fact, legally tenable, and not interposed for any improper purpose.'" *Islamic Shura Council of So. Cal. v. F.B.I.*, 757 F.3d 870, 872

---

[4] Although the FAC fails on its face, the Court notes that Plaintiff's oppositions provides no argument or authority showing that Plaintiff has stated valid claims. In his oppositions, Plaintiff only argues that his claims are not barred by res judicata. *See* Docs. 56 at 1-7, 57 at 1-7. Even assuming that is correct, the FAC still must be dismissed for failure to state a claim.

[5] At the hearing, counsel requested an additional four hours "for having to review the opposition, prepare a reply, and appear at the hearing." Tr. at 10:16-19.

(9th Cir. 2014) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). "An attorney is subject to Rule 11 sanctions, among other reasons, when he presents to the court 'claims, defenses, and other legal contentions . . . [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.'" *Holgate v. Baldwin*, 425 F.3d 671, 675-76 (9th Cir. 2005) (quoting Fed. R. Civ. P. 11(b)(2)).

"When, as here, a 'complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it.'" *Id.* at 676 (quoting *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir.2002)). "Frivolous . . . denote[s] a filing that is both baseless and made without a reasonable and competent inquiry.'" *Id.* (quoting *Moore v. Keegan Mgmt. Co.*, 78 F.3d 431, 434 (9th Cir. 1996); *see also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

The Court has endeavored to give Mr. Tibbedeaux the fullest extent of the doubt and, in doing so, has read the FAC as liberally as possible. Yet, the Court still finds that the FAC is baseless and that Mr. Tibbedeaux drafted and filed it without a reasonable and competent inquiry and/or the expected amount of required legal research. Although Mr. Tibbedeaux candidly explained that the FAC was the first federal court complaint he had drafted, tr. at 6:10-11, that does not justify nor permit what occurred here. The Court reiterates and emphasizes that the overwhelming majority of the FAC was copied and pasted from the *Altmann I* complaint, which was dismissed without prejudice for failure to state a claim and was determined to have been brought in bad faith by this Court. The substantive allegations of ten of the FAC's twelve causes of action are *identical* to those contained in the *Altmann I* complaint. Only a handful of allegations in the FAC not contained in the *Altmann I* complaint provide a faint semblance of support for Mr. Tibbedeaux's contention that this lawsuit is based on conduct that occurred after the *Altmann I* order issued. *See, e.g.*, FAC at ¶¶ 25, 26, 27, 30, 31. Those allegations, however, do not materially alter the substance of these ten claims; they are in effect no different from the same claims asserted in the *Altmann I* complaint.

The Court is mindful that Rule 11 sanctions are "an extreme remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.3d 1336, 1345 (9th Cir. 1988). But it is difficult to conceive how Mr. Tibbedeaux could have reviewed the *Altmann I* complaint, compared it to the FAC, and concluded that the *Altmann I* Order was not entirely applicable or that the FAC's claims were substantively different in any way from those copied and pasted word-for-word from the *Altmann I* complaint. The Court thus concludes that sanctioning Mr. Tibbedeaux for filing the FAC is appropriate.[6] *See Mitchel v. City of Santa Rosa*, 601 Fed. App'x 466, 468 (9th Cir. 2015) (affirming sanctions issued for filing "claims attempt[ing] to re-litigate, without modification, contentions previously dismissed by the district court as lacking legal merit"); *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 638-39 (9th Cir. 2010) ("Rule 11 authorizes a court to impose a sanction on any attorney, law firm, or party that brings a claim for an improper purpose or without support in law or evidence."). This is necessary to deter Mr. Tibbedeaux and other litigants from filing baseless lawsuits.

Counsel for Defendants testify that, to date, they have incurred over $21,000 in attorney's fees and costs, and request that they be reimbursed entirely. When determining Rule 11 sanctions, "[t]he measure to be used is not actual expenses and fees but those the court determines to be reasonable." *In re Yagman*, 796 F.2d 1165, 1185 (9th Cir. 1986). "A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct." Fed. R. Civ. P. 11(c)(4). The Court therefore has broad discretion to determine the appropriate amount of a Rule 11 fee award. *Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir. 1987). In its distilled form, the sanctions are intended to deter, not to implement a professional death penalty.

The Court finds that Rule 11 sanctions in the amount of $2,000.00 to counsel for Rushmore/Wells Fargo and $2,000.00 to counsel for Trustee, for a total of $4,000.00, is appropriate here. At the hearing, Mr. Tibbedeaux was candid and forthcoming about his lack of diligence, judgment,

---

[6] Again giving Mr. Tibbedeaux the fullest extent of the doubt, the Court can understand why Mr. Tibbedeaux potentially believed claims one and twelve were viable, as they were not alleged in the *Altmann I* complaint. The same cannot be said of the remaining claims, however, which were copied and pasted from the *Altmann I* complaint. In addition, claim twelve borders on the frivolous because it is incomprehensible.

and competence in drafting the FAC and prosecuting this case. *See, e.g.*, tr. at 7:1-4. He acknowledged that he essentially did little more than copy and paste the *Altmann I* complaint in order to draft the FAC. Although the Court lawfully could sanction Mr. Tibbedeaux in a substantially higher amount, the Court is hopeful that the sanctions imposed will be sufficient to deter Mr. Tibbedeaux and other counsel from filing baseless lawsuits in the future in this Court and elsewhere. *See Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) ("Rule 11's express goal is deterrence."). Plaintiff and Mr. Tibbedeaux are warned that the Court will not tolerate any further baseless lawsuits, and if filed, will conclude that the sanctions imposed herein were insufficient to deter, a finding that this Court will correct.

## V. CONCLUSION AND ORDER

For the foregoing reasons, the Court:

1. GRANTS Defendants' motions to dismiss (Docs. 46, 48);

2. DISMISSES WITH PREJUDICE the entire FAC; and

3. SANCTIONS Mr. Scott Tibbedeaux $4,000.00 under Rule 11(c)(3). Mr. Tibbedeaux is ORDERED to pay $2,000.00 to counsel for Rushmore/Wells Fargo and $2,000.00 to counsel for Trustee as soon as reasonably practicable. The Court requests that Defendants inform the Court if and when Mr. Tibbedeaux has done so. Defendants shall inform the Court if Mr. Tibbedeaux has not done so within 60 days. Until paid, this Court retains jurisdiction for the limited purpose of enforcement.

The Clerk of Court is directed to CLOSE this case.

IT IS SO ORDERED.

Dated:   **December 10, 2015**          /s/ Lawrence J. O'Neill
                                     UNITED STATES DISTRICT JUDGE